IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Troy Stevenson,                )
                               )
            Petitioner,        )    C.A. No. 8:17-00005-HMH-JDA
                               )
      vs.                      )    **OPINION & ORDER**
                               )
Ronaldo Myers,                 )
                               )
            Respondent.        )

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Jacquelyn D. Austin, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Troy Stevenson ("Stevenson") is a state pretrial detainee seeking habeas corpus relief pursuant to 28 U.S.C. § 2241. Stevenson filed this petition for writ of habeas corpus on January 1, 2017, arguing that the trial judge improperly granted a mistrial, and that the charges against Stevenson should be dismissed on grounds of double jeopardy. (Pet., ECF No. 1.) On July 31, 2017, Ronaldo Myers' ("Myers") first motion for summary judgment was denied without prejudice. (July 31, 2017 Order, ECF No. 26.) On September 5, 2017, Myers filed a second motion for summary judgment. (Mot. Summ. J., ECF No. 29.) Stevenson filed a response in opposition on September 19, 2017, and Myers filed a

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

reply on September 22, 2017.  (Resp. Opp'n Mot. Summ. J., ECF No. 30); (Reply Mot. Summ. J., ECF No. 32.)

On February 24, 2018, Stevenson filed a motion to expedite consideration, notifying the court that his state criminal case has been scheduled for trial during the week of April 9, 2018. (Mot. Expedite Consideration, ECF No. 34.)  Myers filed a response on March 8, 2018, taking no position on the motion to expedite consideration.  (Resp. Mot. Expedite Consideration, ECF No. 35.)  On March 16, 2018, Magistrate Judge Austin issued a Report and Recommendation in which she recommends granting Myers' motion for summary judgment and granting Stevenson's motion to expedite consideration.  (Report & Recommendation, generally, ECF No. 37.)  On March 30, 2018, Stevenson filed his objections to the magistrate judge's Report and Recommendation.  (Objs., ECF No. 38.)  In addition, Stevenson requested oral argument on his objections to the magistrate judge's Report and Recommendation.  (Id., ECF No. 38.)

## I. FACTUAL AND PROCEDURAL HISTORY

Stevenson is a pretrial detainee confined in the Alvin S. Glenn Detention Center.  (Pet. 1, ECF No. 1.)  In February 2014, Stevenson was indicted for murder, kidnapping, second-degree burglary, and attempted armed robbery.  (Return & Mem. Supp. Mot. Summ. J. Attach. 1 (Indictments), ECF No. 10-1.)  On June 15, 2015, Stevenson proceeded to a jury trial.[2]  (Id. Attach. 2 (Trial Tr.), ECF No. 10-2.)  The trial judge instructed the jury throughout the case that they were "not allowed to discuss the case in any way, shape, or form with anyone, including

---

[2] Following jury selection and pretrial motions, Stevenson decided to enter a guilty plea under North Carolina v. Alford, 400 U.S. 25 (1970).  (Return & Mem. Supp. Mot. Summ. J. Attach. 2 (Trial Tr. 209-19), ECF No. 10-2.)  However, Stevenson changed his mind during the plea colloquy, and the jury was sworn in on June 16, 2015.  (Id. Attach. 2 (Trial Tr. 219-20), ECF No. 10-2.)

each other, friends, family members, coworkers, employers, [and] employees." (Id. Attach. 2 (Trial Tr. 1285), ECF No. 10-2.) On June 17, 2015, the jury informed the trial judge that they were uncomfortable entering and leaving the courthouse because Stevenson's family and associates would congregate around the stairs in the courthouse where the jurors had to pass entering and exiting the building. (Id. Attach. 2 (Trial Tr. 1285-86), ECF No. 10-2.) On the same day, the jury informed the trial judge that one of Stevenson's family members or associates had made a comment "to the effect of 'Have a good night or have a good day, Juror.'" (Id. Attach. 2 (Trial Tr. 1285), ECF No. 10-2.) The trial judge informed the parties of the misconduct. (Return & Mem. Supp. Mot. Summ. J. Attach. 2 (Trial Tr. 1286), ECF No. 10-2.) In addition, the trial judge assigned deputies to walk the jurors to their cars and provided the jurors with a route to enter and exit the courthouse without using the main door. (Id. Attach. 2 (Trial Tr. 1286), ECF No. 10-2.)

The jury began deliberations on June 22, 2015, at 4:19 p.m. (Id. Attach. 2 (Trial Tr. 1245), ECF No. 10-2.) The trial judge halted the jury deliberations on June 22, 2015, at 5:24 p.m., after the prosecutor informed the court of potential misconduct by an alternate juror. (Id. Attach. 2 (Trial Tr. 1245, 1272, 1290), ECF No. 10-2); (Id. at 2, ECF No. 10.) Specifically, the prosecutor informed the trial judge that an alternate juror was seen embracing Stevenson's family member or someone associated with Stevenson upon her release as an alternate juror, and that both alternate jurors left the courthouse together and were observed with Stevenson's family member or associate outside the courthouse. (Return & Mem. Supp. Mot. Summ. J. Attach. 2 (Trial Tr. 1286), ECF No. 10-2.)

With the consent of the parties, the trial judge questioned the jury as a group, and multiple jurors disclosed that they overheard the alternate juror state that "she had already made up her mind about the case and that the case was ridiculous." (Id. Attach. 2 (Trial Tr. 1287), ECF No. 10-2.) Next, the trial judge questioned each juror individually under oath regarding their knowledge of any discussions of facts prior to the beginning of deliberations or the exercise of outside influence by Stevenson's family or associates. (Id. Attach. 2 (Trial Tr. 1287), ECF No. 10-2.) Eleven jurors indicated that they heard the alternate juror make the statement, and another juror indicated that the alternate juror whispered to her that "the defendant was not guilty and the blacks should stick together." (Id. Attach. 2 (Trial Tr. 1287), ECF No. 10-2.) Moreover, one juror indicated that he had overheard members of the jury discussing the evidence prior to the beginning of deliberations, one juror overheard the alternate juror state that she did not want to be there and one juror answered that they had discussed a video that was admitted into evidence. (Id. Attach. 2 (Trial Tr. 1288), ECF No. 10-2.) All of these communications occurred pre-deliberation in direct violation of the trial judge's instruction to not discuss the case. (Return & Mem. Supp. Mot. Summ. J. Attach. 2 (Trial Tr. 1288-89), ECF No. 10-2.) However, the jurors stated that they could be fair and impartial moving forward. (Id. Attach. 2 (Trial Tr. 1289), ECF No. 10-2.) On June 22, 2015, the trial judge granted a mistrial based upon juror misconduct and outside influences. (Id. Attach. 2 (Trial Tr. 1283-90), ECF No. 10-2.)

Stevenson filed a motion to dismiss the indictments on double jeopardy grounds on September 10, 2015. (Id. Attach. 5 (Oct. 15, 2015 Order), ECF No. 10-5.) A hearing was held on October 12, 2015, and the trial court denied the motion on October 15, 2015. (Id. Attach. 4

(Hr'g Tr.), ECF No. 10-4); (Return & Mem. Supp. Mot. Summ. J. Attach. 5 (Oct. 15, 2015 Order), ECF No. 10-5.)

On October 16, 2015, Stevenson filed a notice of appeal. (Id. Attach. 6 (Notice of Appeal), ECF No. 10-6.) Stevenson filed his initial brief on December 10, 2015, and the State filed its initial brief on March 10, 2016. (Id. Attach. 7 (Appellant Br.), ECF No. 10-7); (Id. Attach. 8 (Resp't Br.), ECF No. 10-8.) The State filed a motion to dismiss the appeal as interlocutory on March 14, 2016, and the South Carolina Court of Appeals granted the motion to dismiss on May 12, 2016. (Id. Attach. 9 (Mot. Dismiss Appeal), ECF No. 10-9); (Return & Mem. Supp. Mot. Summ. J. Attach. 10 (May 12, 2016 Order), ECF No. 10-10.) Stevenson filed this petition for writ of habeas corpus on January 1, 2017. (Pet., ECF No. 1.)

## II. Report and Recommendation

First, Magistrate Judge Austin recommends granting Myers' second motion for summary judgment on Stevenson's petition, because the record does not demonstrate that a second trial will constitute a violation of Stevenson's double jeopardy rights, and thus, federal intervention is inappropriate. (Report & Recommendation 12, ECF No. 37.) Specifically, the magistrate judge finds that the trial judge properly exercised his discretion in determining that manifest necessity existed to grant a mistrial. (Id. at 13, ECF No. 37.) Second, Magistrate Judge Austin recommends granting Stevenson's motion to expedite consideration. (Id. at 14, ECF No. 37.)

## III. Discussion of the Law

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

5

Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). Further,

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

## B. Objections to the Report and Recommendation

Stevenson filed objections to the Report and Recommendation. Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Stevenson has raised two specific objections. First, Stevenson objects to the magistrate judge's finding that federal intervention is inappropriate in this case. (Objs. 1-2, ECF No. 38.) Specifically, Stevenson contends that the record does not support the magistrate judge's finding for manifest necessity to declare a mistrial in his criminal case. (Id., ECF No. 38.) Second, Stevenson objects to the magistrate judge's finding that the trial judge considered alternatives in granting a mistrial. (Id. at 5-8, ECF No. 38.) These objections are without merit.

Absent extraordinary circumstances, a federal court must abstain from exercising federal jurisdiction when to do so would interfere with a pending state criminal proceeding. Younger v. Harris, 401 U.S. 37, 44 (1971). The Younger Court noted that "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." Id. at 43-44. Accordingly, a court must refrain from exercising jurisdiction over a state criminal proceeding "except in the most narrow and extraordinary of circumstances." Gilliam v. Foster, 75 F.3d 881, 903 (4th Cir. 1996). Younger abstention is appropriate "if (1) there is an ongoing

state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges. Nivens v. Gilchrist, 444 F.3d 237, 241 (4th Cir. 2006) (citing Middlesex Cty. Ethics. Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)).

However, the Younger abstention doctrine does not apply where: "(1) there is a showing of bad faith or harassment by state officials responsible for prosecution; (2) the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions; or (3) other extraordinary circumstances exist that present a threat of immediate or irreparable injury." Id. (citing Kugler v. Helfant, 421 U.S. 117, 124 (1975) (internal quotation marks omitted)). A defendant who must incur the "cost, anxiety, and inconvenience" of defending a single criminal prosecution by itself is not an "irreparable injury." Gilliam, 75 F.3d at 904.

> However, because the Double Jeopardy Clause of the Fifth Amendment protects not only against multiple convictions, but also against being twice put to trial for the same offense, a portion of the constitutional protection it affords would be irreparably lost if Petitioners were forced to endure the second trial before seeking to vindicate their constitutional rights at the federal level. Thus, the irreparable deprivation of this Fifth Amendment Double Jeopardy right is an extraordinary circumstance warranting federal court equitable intervention in Petitioners' state criminal proceeding.

Id. (internal citations and quotation marks omitted). Therefore, "when the record demonstrates that a second state criminal trial will constitute a violation of the defendant's double jeopardy rights, federal court intervention is appropriate." Id. at 905.

After a thorough review of the magistrate judge's Report and the record in this case, the court finds that a second trial will not constitute a violation of Stevenson's double jeopardy rights, and thus, federal intervention is not appropriate. The Double Jeopardy Clause provides

that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Jeopardy attaches when the jury is empaneled and sworn. Crist v. Bretz, 437 U.S. 28, 35 (1978). Thus, the Double Jeopardy Clause protects the defendant's "'valued right to have his trial completed by a particular tribunal.'" Id. at 36 (quoting Wade v. Hunter, 336 U.S. 684, 689 (1949)).

> The reasons why this valued right merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

Arizona v. Washington, 434 U.S. 497, 503-05 (1978) (internal quotation marks omitted). Therefore, "[t]he discretion to discharge the jury before it has reached a verdict is to be exercised only in very extraordinary and striking circumstances." Downum v. United States, 372 U.S. 734, 736 (1963) (internal quotation marks omitted).

"[W]hen a defendant opposes the grant of a mistrial, he may not be retried unless there was a manifest necessity for the grant of the mistrial or the failure to grant the mistrial would have defeated the ends of justice." Gilliam, 75 F.3d at 893. The term "manifest necessity" requires a "high degree" of necessity. Arizona v. Washington, 434 U.S. at 506. The question of whether a mistrial is manifestly necessary is one "that turns on the facts presented to the trial court." Gilliam, 75 F.3d at 895.

> Perhaps the clearest example of a situation in which manifest necessity exists for a mistrial is when a jury is unable to reach a verdict. At the other extreme are situations in which a prosecuting attorney seeks a mistrial in order to have additional time to marshal evidence to strengthen the case against the defendant. Between these two extremes exists a spectrum of trial errors and other

9

difficulties, some creating manifest necessity for a mistrial and others falling far short of justifying a mistrial.

Id. (internal citations omitted). "[T]he Supreme Court has consistently stressed the great deference to be accorded to the decision of the trial judge to grant a mistrial." Id. at 894.

Here, the trial judge determined that a mistrial was manifestly necessary based on juror misconduct and outside influences. (Return & Mem. Supp. Mot. Summ. J. Attach. 2 (Trial Tr. 1283-84), ECF No. 10-2.) Specifically, after questioning the jurors under oath, the trial judge found that the jury openly disregarded the court's instruction to refrain from discussing the case prior to the beginning of deliberations, the vast majority of the jurors heard an alternate juror state that "the case was ridiculous and that she had already made up her mind," and the alternate juror whispered to another juror that Stevenson was not guilty and "the blacks should stick together." (Id. Attach. 2 (Trial Tr. 1246-73), ECF No. 10-2.) Further, the trial judge was informed that an alternate juror was seen embracing Stevenson's family member or someone associated with Stevenson upon her release as an alternate juror, and that both alternate jurors left the courthouse together and were observed with Stevenson's family member or associate outside the courthouse. (Id. Attach. 2 (Trial Tr. 1286), ECF No. 10-2.)

In addition, this juror misconduct was brought to the attention of the trial judge after the jurors had already informed the trial judge that they were uncomfortable entering and leaving the courthouse because Stevenson's family and associates would congregate around the stairs in the courthouse where the jurors had to pass entering and exiting the building. (Id. Attach. 2 (Trial Tr. 1285), ECF No. 10-2.) A juror informed the trial judge that one of Stevenson's family members or associates had made a comment "to the effect of 'Have a good night or have a good day, Juror.'" (Id. Attach. 2 (Trial Tr. 1285), ECF No. 10-2.) Based on these facts, the trial judge

found that even though no juror had indicated he or she could not be fair and impartial, the jury had been exposed to pressure from Stevenson's family and/or associates and a juror who attempted to improperly persuade the jury. (Return & Mem. Supp. Mot. Summ. J. Attach. 2 (Trial Tr. 1289), ECF No. 10-2.)

Stevenson cites the facts presented in State v. Bantan, 692 S.E.2d 201 (S.C. 2010), and State v. Wasson, 386 S.E.2d 255 (S.C. 1989) to argue that granting mistrial was inappropriate. (Objs. 2-4, ECF No. 38.) In Bantan, the court denied the defendant's motion for mistrial after a juror had been exposed to a comment that police had targeted the defendant because of his involvement in an unrelated robbery. Bantan, 692 S.E.2d at 205. This comment was overhead at a gas station between two men he did not know. Id. All of the jurors confirmed they would be able to disavow the statement and render a verdict based solely on the evidence presented. Id. at 206. Similarly, in Wasson, the court denied the defendant's motion for a mistrial when the trial judge discovered that two jurors had read a newspaper article involving the defendant. Wasson, 386 S.E. 2d at 257. The jurors provided that the newspaper article had not affected their decision in the case. Id. The facts in Bantan and Wasson are distinguishable because the statements were not made by jurors. Here, the statements were made by an alternate juror, in direct conflict with the trial judge's instruction to not discuss the case prior to the beginning of deliberations. The cases cited by Stevenson do not rise to the level of juror misconduct in the present case.

Stevenson contends that the facts supporting juror misconduct are incorrect and not supported by the record. (Objs. 1-2, ECF No. 38.) Specifically, Stevenson argues that the record does not support that Stevenson's family members or associates congregated around the

11

stairs in the courthouse and embraced an alternate juror. (Id., ECF No. 38.) However, a juror disclosed to the trial judge that they were "uncomfortable leaving the building and coming back to the courthouse," and the trial judge ensured the jurors felt safe by assigning deputies to walk with the jurors. (Return & Mem. Supp. Mot. Summ. J. Attach. 2 (Trial Tr. 1286), ECF No. 10-2.) Further, the judge provided that he was informed "from the Solicitor's Office that after deliberations had begun that one alternate juror, juror number 183, had embraced a member of [Stevenson's] family or someone associated with [Stevenson] upon her release as a juror." (Id. Attach. 2 (Trial Tr. 1286), ECF No. 10-2.) Moreover, even ignoring these contested acts of misconduct, the court finds that the record sufficiently supports the trial judge's determination that a mistrial was manifestly necessary.

Further, Stevenson argues that the trial judge did not consider alternatives to granting a mistrial. (Objs. 5-8, ECF No. 38.) "[A] reviewing court may find relevant whether the trial judge . . . gave appropriate consideration to alternatives less drastic than granting a mistrial." Gilliam, 75 F.3d at 895. Stevenson contends that the trial judge "did not acknowledge the defense's request for a curative instruction." (Id., ECF No. 38.) However, the trial judge fully considered the application of a curative instruction. The trial judge found that a curative instruction would not likely reduce the prejudice because no curative instruction could undo the influence that was exerted on the jury and in light of the previous failures to follow the trial court's orders to not discuss the case. (Id. Attach. 2 (Trial Tr. 1289-90), ECF No. 10-2.) In addition, nothing in the record indicates that the trial judge acted "irrationally or irresponsibly," or in such a manner as to cast doubt upon the exercise of his broad discretion. Gilliam, 75 F.3d at 894 (citing Arizona v. Washington, 434 U.S. at 514).

12

Based on the foregoing, the court finds that a second trial will not constitute a violation of Stevenson's double jeopardy rights, and thus, federal intervention is not appropriate. See Gilliam, 75 F.3d at 905. The trial transcript overwhelmingly supports the trial judge's decision to grant a mistrial. The trial judge fully considered the constitutional concerns and the likely effectiveness of an alternative such as a curative instruction. Therefore, the court adopts the magistrate judge's Report and Recommendation and incorporates it herein. The court denies Stevenson's request for oral argument. The court has reviewed the magistrate judge's Report and Recommendation and Stevenson's objections and finds that no useful purpose would be served by holding oral arguments. See Doyle v. Clyburn, No. 3:10-MBS-KFM, 2012 WL 464865, at *4 (D.S.C. Feb. 10, 2012) (unpublished) (denying request for oral argument because it would serve no useful purpose).

It is therefore

**ORDERED** that Myers' motion for summary judgment, docket number 29, is granted. It is further

**ORDERED** that Stevenson's motion to expedite consideration, docket number 34, is granted. It is further

**ORDERED** that Stevenson's motion for oral argument, docket number 38, is denied.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
April 3, 2018

**NOTICE OF RIGHT TO APPEAL**

The Petitioner is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.